UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:21-cv-61427-RKA

**JOHN LUCA**,

     Plaintiff,

v.

**UNITED COLLECTION BUREAU, INC.**,

     Defendant.
_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION TO STAY AND FOR PROTECTIVE ORDER

### INTRODUCTION

As found by Judge Dimitrouleas in denying substantively identical motions to stay pending a petition for *en banc* review of Hunstein v. Preferred Collection & Mgmt. Servs., Inc., 994 F.3d 1341 (11th Cir. 2021), there is no "good cause nor exceptional circumstances warranting a stay of this action." Seffar v. Fin. Bus. & Consumer Sols., Inc., No. 0:21-cv-61000-WPD (S.D. Fla. July 14, 2021) (Dimitrouleas, J.); *see also* Perez v. Phoenix Financial Services, LLC, No. 1:21-cv-21722-WPD (S.D. Fla. August 18, 2021) ("As it found in [Seffar], the Court finds that there is neither good cause nor exceptional circumstances warranting a stay of this action. [citation omitted]. It is unknown whether the Eleventh Circuit will agree to rehear [Hunstein] *en banc*, and even if it does, when the Circuit Court will issue a ruling in Hunstein. Moreover, it is uncertain whether that ruling will resolve this case. The Court explicitly notes that it has considered all of the Parties' arguments including the effect of the Eleventh Circuit granting *en banc* review in [Hunstein] if it does grant such review."); Santiago v. MediCredit, Inc., No. 0:21-cv-61424-WPD (S.D. Fla. July 21, 2021) (same).

As elaborated by Judge Smith in denying a substantively identical motion to stay, "Hunstein, 994 F.3d 1341 (11th Cir. 2021), is a published opinion. Pursuant to Eleventh Circuit Internal Operating Procedure – Circuit Rule 36, '[u]nder the law of this circuit, published opinions are binding precedent. The issuance or non-issuance of the mandate does not affect the result.' Thus, the pending motion for rehearing *en banc* does not affect the precedential value of Hunstein, which is the law of this circuit." Durling v. Credit Corp Solutions, Inc., No. 0:21-cv-61002-RS (S.D. Fla. July 8, 2021) (Smith, J.) (further finding that, "[w]hile [Credit Corp Solutions] has argued that a stay would conserve resources and a decision in Hunstein might streamline the issues, neither of these considerations show any hardship or inequity.  Additionally, a stay may prejudice [Durling] as witness' memories fade, documents are lost, and [Credit Corp Solutions] allegedly illegal conduct continues. Thus, [Credit Corp Solutions] has not met its burden of establishing that a stay is appropriate under these circumstances.").

Turning to the matter before this Court, Defendant United Collection Bureau, Inc. ("Defendant" or "UCB") offers no meaningful support for its extraordinary request that this Court indefinitely stay Plaintiff John Luca's ("Plaintiff" or "Luca") case. *In lieu of substance*, Defendant paints itself facing "exceptional circumstances unique to UCB," D.E. 21 at 13, asserts the above-mentioned decisions[1] of Judge Dimitrouleas and Judge Smith are "neither binding nor persuasive," Id., places curious emphasis on the fact that "none of [the above-mentioned opinions issued of Judge Dimitrouleas and Judge Smith] address the Eastern District of New York's reasoned decision in [In re FDCPA Mailing Vendor Cases, 2021 WL 3160794 (E.D.N.Y. July 23, 2021)" and, significantly, proffers Supreme Court's decision in [TransUnion LLC v. Ramirez, 594 U.S.

---

[1] Attached as Composite Exhibit "A" are complete copies of said recent rulings.

___, 141 S. Ct. 2190 (2021)] as casting "doubt on the continued viability of Hunstein." See D.E. 21 at 3-5.

Ultimately, because "[d]istrict courts are, of course, bound by the law of their own circuit," Zuniga v. United Can Co., 812 F.2d 443, 450 (9th Cir. 1987), "[u]ntil the Supreme Court issues a decision that actually changes the law," this Court is "duty-bound to apply" the Eleventh Circuit's "precedent and to use it and any existing decisions of the Supreme Court" to adjudicate the claims. Gissendaner v. Comm'r, Ga. Dep't of Corr., 779 F.3d 1275, 1284 (11th Cir. 2015), *cert. denied sub nom.* Gissendaner v. Bryson, 135 S. Ct. 1580 (2015).[2]

Even had the Eleventh Circuit not already issued its decision, where the requested stay, such as the one sought by UCB, is indefinite, reasons of judicial economy are insufficient to justify a stay. See Ortega Trujillo v. Conover & Co. Commc'ns, Inc., 221 F.3d 1262, 1265 (11th Cir. 2020) (finding the district court abused its discretion in granting stay, finding "[w]e can see from the district court's order no reason sufficient to justify the indefinite stay that the district court ordered."); Halperin v. Youfit Health Clubs, LLC, No. 18-cv-61722, 2018 WL 6991168, at *1 (S.D. Fla. Sept. 19, 2018) (Dimitrouleas, J.) (denying motion to stay where "[i]t is unknown when" "the Eleventh Circuit will issue a ruling in Salcedo v. Hanna, Case No. 17-14077 (11th Cir.)."). Consequently, and because Defendant does not demonstrate any undue burden it will face should this case proceed, this Court should deny Defendant's Motion to Stay [D.E. 21].

## RELEVANT BACKGROUND

Plaintiff sued Defendant for violations of the Fair Debt Collection Practices Act ("FDCPA") and Florida Consumer Collection Practices Act ("FCCPA") in state court in Broward

---

[2] Internal citations and quotations are omitted.

County, Florida. *See* D.E. 1-1 at 1. Plaintiff claimed Defendant unlawfully transmitted Plaintiff's personal information to third-party so that said third-party could prepare, print, package, compile, and/or otherwise send a collection letter to Plaintiff. *See* D.E. 1-1 at ¶¶ 20, 28, 29. Plaintiff further claims Defendant unlawfully transmitted Plaintiff's personal information to other third-parties entities by "[1] utilizing 'skip trace' services; [2] utilizing bankruptcy, SCRA, probate, and other 'scrubbing' services; and [3] utilizing independent third-party contractors to attempt to collect the Consumer debt from Plaintiff." D.E. 1-1 at ¶ 25.

On July 09, 2021, Defendant removed Plaintiff's case from Broward County state court to this Court. *See generally* D.E. 1. On August 25, 2021, Defendant filed the Motion to Stay and For Protective Order [D.E. 21] (the "Motion to Stay") now pending before this Court and which is the subject of this Response in Opposition.

## GOVERNING STANDARD

The Supreme Court, through its decision in Landis v. N. Am. Co., recognized that a district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." 299 U.S. 248, 254 (1936). Yet, "[h]ow this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Id. at 254-55.

In this regard, Landis demands that when a party requests a stay pending the outcome of litigation in a separate action—as Defendant requests here—that litigant "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." Id. at 255. And "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." Id.

Defendant, therefore, bears the burden of justifying its request that Plaintiff stand aside pending the Eleventh Circuit's adjudication of a petition for rehearing in a matter to which neither Plaintiff nor Defendant is a party. As the Eleventh Circuit explained, "although a motion to stay is directed to the district court's sound discretion, a stay order must be evaluated in light of the court's strong obligation not to dismiss or postpone the federal claim in the absence of exceptional circumstances." Am. Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc., 743 F.2d 1519, 1525 (11th Cir. 1984).

To that end, reasons of judicial economy are insufficient to justify a stay. *See* Ortega Trujillo, 221 F.3d at 1265 ("The stay ordered by the district court is 'immoderate' and, therefore, an abuse of discretion.").

**ARGUMENT**

**1. HUNSTEIN IS BINDING PRECEDENT THAT THIS COURT MUST APPLY.**

Through its opinion in Hunstein, the Eleventh Circuit found that a plaintiff alleging a violation of 15 U.S.C. § 1692c(b) over the disclosure of personal information by a debt collector to a mail vendor has standing to sue. Hunstein, 994 F.3d at 1348-49 ("Because (1) § 1692c(b) bears a close relationship to a harm that American courts have long recognized as cognizable and (2) Congress's judgment indicates that violations of § 1692c(b) constitute a concrete injury, we conclude that Hunstein has the requisite standing to sue.").

In interpreting the statute by its plain meaning, the Eleventh Circuit determined that "because [the defendant's] transmittal of Hunstein's personal debt-related information to Compumail constituted a communication 'in connection with the collection of any debt' within the meaning of § 1692c(b)'s key phrase, Hunstein adequately stated a claim." Id. at 1352.

It is undeniable that Hunstein is binding authority, as the Eleventh Circuit has repeatedly

held both through prior decisions and its internal operating procedures:

> Although the mandate in *Johnson* has not yet issued, it is nonetheless the law in this circuit. A mandate is the official means of communicating our judgment to the district court and of returning jurisdiction in a case to the district court. The stay of the mandate in *Johnson* merely delays the return of jurisdiction to the district court to carry out our judgment in that case. The stay in no way affects the duty of this panel and the courts in this circuit to apply now the precedent established by *Johnson* as binding authority.

Martin v. Singletary, 965 F.2d 944, 945 n.1 (11th Cir. 1992) (*citing* United States v. Machado, 804 F.2d 1537, 1543 (11th Cir. 1986)); *see also* 11th Cir. Internal Operating Procedure No. 2 ("Under the law of this circuit, published opinions are binding precedent. The issuance or non-issuance of the mandate does not affect this result."). In this vein, district courts, as required, are already applying Hunstein. See In re: Zantac (Ranitidine) Prods. Liab. Litig., 20-MD-2924, 2021 WL 2682659, at *25 (S.D. Fla. June 30, 2021) (Rosenberg, J.) (applying Hunstein).

Because the Eleventh Circuit has spoken through a published—and unanimous—panel opinion, this Court need not, nor should, stay this case to await an unlikely change in controlling interpretation at some unknown point in the future. *See* Durling, 2021 WL 2885879, at *1 ("Thus, the pending motion for rehearing *en banc* does not affect the precedential value of Hunstein, which is the law of this circuit."); *accord* Garmendiz v. Capio Partners, LLC, No. 8:17-cv-00987-EAK-AAS, 2017 WL 3208621, at *3 (M.D. Fla. July 25, 2017) ("In every case, there is always the possibility that the law will change in a manner that impacts the viability of the parties' claims and defenses. Far from simplifying the Court's analysis, granting a stay under these circumstances would set unwise precedent that every time a controversial issue is raised on appeal, all related or similar cases must be halted pending the appellate court's ruling."). Rather, this Court is "duty-bound to apply" the Eleventh Circuit's precedent. Gissendaner, 779 F.3d at 1284.

PAGE | **6** of **19**

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

As a result, this Court should deny Defendant's motion to stay.

**2.   PETITIONS FOR REHEARING *EN BANC* ARE RARELY GRANTED AND CANNOT JUSTIFY THE INDEFINITE STAY DEFENDANT SEEKS.**

The Eleventh Circuit has repeatedly emphasized that "[t]he decision to grant *en banc* review is always discretionary and disfavored." Keohane v. Fla. Dept. of Corr. Sec'y, 981 F.3d 994, 995 (11th Cir. 2020) (W. Pryor, J., respecting the denial of rehearing *en banc*) ("The grant of *en banc* review is and should be rare. The Federal Rules of Appellate Procedure say so: 'An *en banc* hearing or rehearing is not favored . . . .' Fed. R. App. P. 35(a).").

Practical considerations confirm why "the institutional cost of rehearing cases *en banc* is extraordinary. . . . It is an enormous distraction to break into [our regular] schedule and tie up the *entire* court to hear one case *en banc*." Bartlett ex rel. Neuman v. Bowen, 824 F.2d 1240, 1243 (D.C. Cir. 1987) (Edwards, J., concurring in denial of rehearing *en banc*) (emphasis original). "After all, a panel of three judges has already spent considerable resources deciding the appeal once. For that reason, we and our sister circuits have said again and again that the 'heavy artillery' of *en banc* review should be used rarely." Keohane, 981 F.3d at 996 (*citing* United States v. Hogan, 986 F.2d 1364, 1369 (11th Cir. 1993); Mitts v. Bagley, 626 F.3d 366, 369-71 (6th Cir. 2010) (Sutton, J., concurring in denial of rehearing *en banc*); Kane Cnty. v. United States, 950 F.3d 1323, 1324 (10th Cir. 2020) (Phillips, J., concurring in denial of rehearing *en banc*); Church of Scientology of Cal. v. Foley, 640 F.2d 1335, 1339-42 (D.C. Cir. 1981) (*en banc*) (Robinson, J., dissenting)).[3]

---

[3] Empiric evidence confirms as much. *See* Ryan Vacca, Acting Like an Administrative Agency: The Federal Circuit En Banc, 76 Mo. L. Rev. 733, 738 (2011) (noting that .07 percent of the Eleventh Circuit's total docket from 2001 to 2009 consisted of *en banc* cases). Since that period,

PAGE | **7** of **19**

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

Defendant offers no meaningful reason why the Hunstein *en banc* petition is any different and, instead, offers illusory rational – such as how "the Eastern District of New York recently ruled" – to support the notion that "there is a high likelihood that the Eleventh Circuit will grant the petition for rehearing." Motion to Stay at 3.[4] Make no mistake, "[c]orrect decisions are never worthy of *en banc* review," United States v. Matchett, 837 F.3d 1118, 1129 (11th Cir. 2016) (W. Pryor, J., respecting the denial of rehearing *en banc*), and the Eastern District of New York decision, In re FDCPA Mailing Vendor Cases, championed by Defendant, *at best*, is a red herring, as following the rational of the Eastern District of New York means this case ought to be *remanded* to Broward County state court, *see* D.E. 1, for lack of Article III standing.

**3.  THE SUPREME COURT DID NOT "call[] into question the continued viability of the Hunstein decision."**

Contrary to Defendant's suggestion, the Supreme Court's decision in TransUnion, LLC v. Ramirez, 141 S. Ct. 2190 (2021), firmly supports the Eleventh Circuit's holding.[5] Moreover, such

---

there appears to be a *decline* in granted *en banc* petitions from those already-low rates. *Compare id. with, e.g.*, https://www.ca9.uscourts.gov/judicial_council/publications/AR2019/ (observing that, in the Ninth Circuit, between 2015 and 2019 petitions for rehearing en banc increased from 796 to 817, but grants of rehearing declined from 16 to 14).

[4] That numerous players in the debt collection industry submitted *amicus curiae* briefs does not change this. *See* Motion to Stay at 3. More notable is that no consumer protection interest groups or government actors supported the petition for *en banc* review. That, and Hunstein may negatively impact the profitability of debt collectors is something the Eleventh Circuit already considered and rejected. *See* Hunstein, 994 F.3d at 1352 ("**It's not lost on us that our interpretation of § 1692c(b) runs the risk of upsetting the status quo in the debt-collection industry**. We presume that, in the ordinary course of business, debt collectors share information about consumers not only with dunning vendors like Compumail, but also with other third-party entities. . . . . **Even so, our obligation is to interpret the law as written, whether or not we think the resulting consequences are particularly sensible or desirable**.") (emphasis added).

[5] Important, *Ramirez* does not cite *Hunstein*, let alone address it. Moreover, *Ramirez* concerned different claims under a different statute (the Fair Credit Reporting Act, not the FDCPA) at a

PAGE | **8** of **19**

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

a suggestion, although novel, is not unprecedented, as it was one of the various arguments[6] considered, yet swiftly rejected, by Judge Dimitrouleas in Santiago v. MediCredit, Inc., No. 0:21-cv-61424-WPD (S.D. Fla. July 21, 2021).

To be sure, the Court noted in Ramirez that "[v]arious intangible harms can also be concrete," and thus sufficient to confer standing without any out-of-pocket loss. Id. at 2204. "Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion." Id.; *see also* Mattiaccio v. DHA Grp., Inc., 474 F. Supp. 3d 231, 247 (D.D.C. 2020) ("[t]he common law has long recognized a right to personal privacy, and both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person."). It is precisely the first two of those examples – reputational harms and disclosure of private information – that demonstrate Plaintiff has standing here, *see* D.E. 1-1 at ¶¶ 21-23, and that Hunstein was correctly decided. *See* Hunstein, 994 F.3d at 1347 ("Notably, the FDCPA's statutory findings explicitly identify 'invasions of individual privacy' as one of the harms against which the statute is directed. 15 U.S.C. § 1692(a). And to that end, the statutory provision under which Hunstein has sued here expressly prohibits a debt collector from 'communicat[ing]' with any but a few persons or entities

---

different stage of the proceedings (after a trial verdict, as opposed to the pleadings stage). And as has unfortunately become the case after *Spokeo v. Robins*, 136 S.Ct. 1540 (2016), questions of Article III standing often turn on minor factual differences within the same statute, let alone different statutes under which plaintiffs assert different claims. *See Sierra v. City of Hallandale Beach*, 996 F.3d 1110, 1116 (11th Cir. 2021) (Newsom, J., concurring) ("Since *Spokeo* was decided, courts considering the same statute have found that seemingly slight factual differences distinguish the qualifyingly 'concrete' from the disqualifyingly 'abstract.'").

[6] Attached as Exhibit "B" is a copy of the Motion to Dismiss that Judge Dimitrouleas promptly denied.

'in connection with the collection of any debt.' Id. § 1692c(b). Although § 1692c(b) isn't identical in all respects to the invasion-of-privacy tort, we have no difficulty concluding that it bears 'a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.'").

Unsurprisingly, with respect to the plaintiff and class members who had their credit reports transmitted to third parties, the Court in Ramirez found concrete harm sufficient to confer Article III standing without the need for any additional showing of harm. 141 S. Ct. at 2209 ("In short, the 1,853 class members whose reports were disseminated to third parties suffered a concrete injury in fact under Article III."). Likewise, here, Defendant transmitted personal information regarding Plaintiff's alleged debt to a third party[7] in violation of the FDCPA, which is a concrete harm sufficient to confer standing. *Accord* St. Pierre v. Retrieval-Masters Creditors Bureau, 898 F.3d 351, 357-58 (3d Cir. 2018) (". . . the exposure of a plaintiff's account number through a glassine window implicates a core concern animating the FDCPA—the invasion of privacy—and thus is closely related to harm that has traditionally been regarded as providing a basis for a lawsuit in English and American courts.").

Moreover, unlike in Ramirez, which concerned a different statute, "the judgment of Congress" also supports Article III standing here. Hunstein, 994 F.3d at 1348. As the Eleventh Circuit wrote:

> Congress, of course, expresses its 'judgment' in only one way—through the text of duly enacted statutes. Even assuming that § 1692c(b) does not clearly enough express Congress's judgment that injuries of the sort that Hunstein alleges are actionable, here

---

[7] As Justice Thomas noted, "[i]n the historical context of libel, publication to even a single other party could be enough to give rise to suit. This was true, even where the third party was a telegraph company, an attorney, or a stenographer who merely writes the information down." Ramirez, 141 S. Ct. at 2223 (Thomas, J., dissenting).

> Congress went further to 'explain itself.' In particular, as already noted, in a section of the FDCPA titled 'Congressional findings and declaration of purpose,' Congress identified the 'invasion[ ] of individual privacy' as one of the harms against which the statute is directed. 15 U.S.C. § 1692(a).

Id. Indeed, the Senate report introducing the FDCPA noted:

> In addition, this legislation adopts an extremely important protection recommended by the National Commission on Consumer Finance and already the law in 15 States: *it prohibits disclosing the consumer's personal affairs to third persons*. Other than to obtain location information, a debt collector may not contact third persons such as a consumer's friends, neighbors, relatives, or employer. *Such contacts are not legitimate collection practices and result in serious invasions of privacy*, as well as the loss of jobs.

S. Rep. No. 95-382, at 4 (1977), reprinted at 1977 U.S.C.C.A.N. 1695, 1699. Thus, far from undermining Hunstein, Ramirez supports it.

Further, Defendant's reliance on footnote 6 in Ramirez is misplaced for a host of reasons. First, footnote 6 constitutes *dicta* and is not a holding of the Court. Second, the Court expressly noted that it was addressing a new argument the plaintiff raised for the first time on appeal, which was therefore "forfeited." Ramirez, 141 S. Ct. at 2210 n.6. More fundamentally, the line in footnote 6 that Defendant implicitly references – "[n]or have they necessarily recognized disclosures to printing vendors as actionable publications" – is hardly a declaration that disclosing debtor information to a third-party vendor cannot result in a concrete injury, particularly where the FDCPA expressly forbids such conduct because it is an invasion of the consumer's privacy.

Indeed, the only case the Court cited in support of that sentence is an *unpublished* Eleventh Circuit decision, Mack v. Delta Air Lines, Inc., 639 F.App'x 582, 586 (11th Cir. 2016), that predates Hunstein, which, as noted above, is a *published, binding decision*. Finally, Mack did not involve the FDCPA, nor did it concern whether a plaintiff had Article III standing. Instead, the

PAGE | **11** of **19**

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

court in *Mack* merely noted that "[n]either the alleged communication to Delta's top management and lawyer nor the communication to a third-party printer constituted 'publication' for purposes of stating a claim for libel under Georgia law." Id. at 586. That a communication to a vendor may not constitute a publication for purposes of a common law claim for libel under Georgia law, however, does not undercut the Eleventh Circuit's finding that the harm flowing from a debt collector's dissemination of private debt information to a third-party vendor is analogous to the harm arising from invasions of privacy at common law. *See, e.g.*, Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 653-54 (4th Cir. 2019) ("Rather than paying heed to Congress's judgment of what sort of particular and concrete harms ought to count, the appellants ask that we import the elements of common law torts, piece by piece, into any scheme Congress may devise. As they see it, Article III's injury-in-fact requirement is not met until the plaintiff's alleged harm has risen to a level that would support a common law cause of action. This sort of judicial grafting is not what *Spokeo* had in mind. *Our inquiry is focused on types of harms protected at common law, not the precise point at which those harms become actionable.*").

Rather, and as the Eleventh Circuit explained, Congress can create causes of action not found in common law and a plaintiff alleging a violation of that statute has Article III standing – without any additional evidence of harm – so long as it "bears a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." Hunstein, 994 F.3d at 1347. The two need not, however, be identical.[8] *See* Id. (noting that the "fit between a new statute and a pedigreed common-law cause of action need not be perfect, but we

---

[8] *See Ramirez*, 141 S. Ct. at 2209 ("In looking to whether a plaintiff's asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts, we do not require an exact duplicate.").

are called to consider at a minimum whether the harms match up between the two.") (*quoting* Muransky v. Godiva Chocolatier, Inc., 979 F.3d 917, 926 (11th Cir. 2020) (*en banc*)). Here, "[a]lthough § 1692c(b) isn't identical in all respects to the invasion-of-privacy tort, we have no difficulty concluding that it bears 'a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.'" Hunstein, 994 F.3d at 1347. As such, footnote 6 of Ramirez does not implicitly overrule Hunstein, militate in favor of *en banc* review, or support an indefinite stay here.[9]

### 3. DEFENDANT FAILS TO CARRY ITS BURDEN UNDER LANDIS.

### 3.1 DEFENDANT PRESENTS NO CLEAR CASE OF HARDSHIP OR INEQUITY.

The onus lays on Defendant to show why the circumstances here justify an unusual exercise of this Court's discretion to bring this litigation to a halt for an indefinite period of time. *See* Landis, 299 U.S. at 254-55; Encarnacion v. Fin. Corp. of Am., No. 2:17-cv-566-FtM-38CM, 2018 WL 5631045, at *2 (M.D. Fla. Oct. 31, 2018) ("The party seeking a stay has the burden to demonstrate the need for it."); Garmendiz, 2017 WL 3208621, at *2 ("The Defendant bears the burden of establishing that it will suffer a hardship or inequity if forced to proceed.").

Defendant, however, does not meet this burden and, instead, claims **[1]** "*a stay will clearly simplify the issues in this case and streamline trial*," Motion to Stay at 10 (emphasis added), **[2]** "*a stay will reduce the burden of litigation on the parties*," Id. (emphasis added), **[3]** "[a] *stay would also reduce the burden on the Court*," Id. at 10-12, and **[4]** a stay is appropriate because

---

[9] While the court in *In re FDCPA Mailing Vendor Cases*, No. 2:21-cv-03383, Doc. 11 (E.D.N.Y. July 23, 2021), *see* ECF No. 12 at 4, reached a different conclusion, *Hunstein* is not binding on courts in New York. On the other hand, *Hunstein* is binding on district courts within the Eleventh Circuit. In any event, Plaintiff respectfully submits that *In re FDCPA Mailing Vendor Cases* is wrongly decided, for the reasons the Eleventh Circuit found Article III standing in *Hunstein*.

"*this is just one case out of at least seven* [Hunstein-based claims] *already brought against UCB*. Motion to Stay at 11 (emphasis added). Yet, "being required to defend a suit [in the interim], without more, does not constitute a 'clear case of hardship or inequity' within the meaning of Landis" to justify a stay of this action. Lockyer v. Mirant Corp., 398 F.3d 1098, 1112 (9th Cir. 2005); *see also* Encarnacion, 2018 WL 5631045, at *2 ("Further, the FCA has not demonstrated any hardship or inequity in being required to continue defending this lawsuit. Therefore, the Court finds a stay of this case neither necessary nor prudent."); Garmendiz, 2017 WL 3208621, at *2 ("many modern courts have held that being required to defend a lawsuit does not constitute a hardship or inequity.").

Although Defendant suggests that "[w]ithout a stay [] the parties and the Court will continue to be burdened by active litigation absent a stay," Motion to Stay at 12, Plaintiff certainly disagrees that a stay would benefit Plaintiff or that Plaintiff would suffer harm if this Court denied the Motion to Stay. To the contrary, a stay serves only to prejudice Plaintiff and benefit Defendant. Again, Defendant removed Plaintiff's case to this Court only to then seamlessly seek to stay the case based a *potential* rehearing that *may* result in this case being remanded for lack of subject-matter jurisdiction. As articulated by Judge Smith in denying a substantively identical motion to stay, "witness' memories fade, documents are lost, and [the] allegedly illegal conduct continues." Durling, No. 0:21-cv-61002-RS (S.D. Fla. July 8, 2021). Defendant does not conceal the fact that, regardless of this Court's ruling on the Motion to Stay, Defendant shall be seeking to compel arbitration, Motion to Stay at 10.

Thus, while Defendant would have this Court believe that the stay it seeks is in the interest of judicial economy, more accurately, Defendant aims to delay the application of the binding precedent set in Hunstein while it (Defendant) continues to shore-up novel ways to avoid liability.

*See, e.g.*, Garmendiz, 2017 WL 3208621, at *2 ("Furthermore, the risk of evidence being lost or destroyed and the potential for witnesses' memories to fade further demonstrates the potential for prejudice to the Plaintiff. In light of the foregoing, the Court finds that granting a stay will prejudice the Plaintiff."); Gosneigh v. Nationstar Mortg., LLC, No. 8:16-CV-3040-T33AEP, 2017 WL 435818, at *2 (M.D. Fla. Feb. 1, 2017) ("According to Gosneigh, such a delay could lead to an 'irreversible loss of needed information,' such as original call logs and recordings.").

With respect to the present matter, indeed, there are multiple entities – such as the letter vendor used by Defendant, as well as the third-parties Defendant uses to conduct various "scrubs," *see* D.E. 1-1 at ¶ 25 – that are likely to have relevant evidence, thereby making it even more likely that evidence will not be properly preserved, lost, or destroyed during any extended delay of the litigation. *See* Richardson v. Verde Energy USA, Inc., No. 15-6325, 2016 WL 4478839, at *2 (E.D. Pa. Aug. 25, 2016) ("Moreover, as the plaintiffs argue, a significant delay with unknown limits would cause them unnecessary prejudice. Memories fade, records are lost or destroyed as time wears on, and employees get fired, are transferred, or quit. On the other hand, the defendant would not be prejudiced if the stay is denied because it would experience no harm by engaging in discovery and motion practice.");

Restating this principle, the Eastern District of Virginia noted in denying a defendant's stay request that "[t]he mere fact that this action will go forward, and that litigating it will cost money, is an insufficient reason to warrant a stay." Sunbeam Prods., Inc. v. Hamilton Beach Brands, Inc., No. 09-791, 2010 WL 1946262, at *5 (E.D. Va. May 10, 2010). The same holds true even in the face of prospective class discovery above and beyond merits discovery. *See, e.g.*, Montez v. Chase Home Fin. LLC, No. 11-530, 2011 WL 2729445, at *1 (S.D. Cal. July 13, 2011) (refusing stay in

PAGE | **15** of **19**

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

spite of the defendant's complaint of the potential "significant burden and expense of engaging in potentially broad-ranging and expensive discovery concerning this putative class action").

At the end of the day, Defendant makes no showing of any "hardship" or "inequity" to justify the extraordinary relief it now seeks. *See* Mendez v. Optio Solutions, LLC, No. 16-1882, 2017 WL 914587, at *4 (S.D. Cal. Mar. 8, 2017) (denying a request for a stay in part because "Defendant [did] not demonstrate a hardship in moving forward with inevitable discovery and motion practice"); Jones v. AD Astra Recovery Servs., Inc., No. 16-1013, 2016 WL 3145072, at *6 (D. Kan. June 6, 2016) (denying a stay and finding the "potential that Defendant could engage in greater discovery, if the case is not stayed, does not constitute a 'rare circumstance' which justifies an indefinite stay"); Konopca v. Comcast Corp., No. 15-6044, 2016 WL 1645157, at *4 (D.N.J. Apr. 26, 2016) (denying stay where "the only purported 'hardship' identified by Defendant is the possibility that the parties may engage to some extent in unnecessary discovery and/or motion practice"); *see also* Durling, 2021 WL 2885879, at *1 ("Defendant has not made out a clear case of hardship or inequity. While Defendant has argued that a stay would conserve resources and a decision in Hunstein might streamline the issues, neither of these considerations show any hardship or inequity. Additionally, a stay may prejudice Plaintiff as witness' memories fade, documents are lost, and Defendant's allegedly illegal conduct continues. Thus, Defendant has not met its burden of establishing that a stay is appropriate under these circumstances.").

Accordingly, this Court should deny Defendant's motion to stay.

## 3.2    THE REQUESTED STAY IS INDEFINITE

Defendant does not address the length of the stay it seeks. *See* Halperin, 2018 WL 6991168, at *1 (denying motion to stay where it is "unknown" when the Eleventh Circuit will issue a decision). Of course, there is no way of knowing how or when the Eleventh Circuit will decide the

PAGE | **16** of **19**

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

petition for *en banc* review. At least one other recent case – Johnson v. NPAS Sols., LLC, No. 18-12344 (11th Cir.) – suggests that time period could extend to the better part of a year, if not longer. In Johnson, the Eleventh Circuit, *through a divided panel*, issued its decision on September 17, 2020. *See* Johnson v. NPAS Sols., LLC, 975 F.3d 1244 (11th Cir. 2020). Petitions for rehearing, including numerous amicus submissions, followed. Yet, since the parties filed their respective petitions for rehearing on October 22, 2020 – more than *nine months* ago – the Eleventh Circuit has yet to rule on either petition for *en banc* review. should the Eleventh Circuit grant either, or both petitions, new briefing will ensue, leading to an even longer delay. Thus, given the status of Johnson, it cannot be fairly said with any certainty that any delay here will not be "indefinite or immoderate."

As the Eleventh Circuit made clear, given the indefinite nature of the requested stay and the lack of meaningful justification, a stay is not proper. *See* Ortega Trujillo, 221 F.3d at 1265 ("The case law illustrates that, in a case like this one, the interests of judicial economy alone are insufficient to justify such an indefinite stay."); Mancini v. JPMorgan Chase Bank, N.A., No. 1:15-cv-61524-UU, 2016 WL 1273185, at *1 (S.D. Fla. March 25, 2016) (Ungaro, J.) ("Any stay would be indefinite and solely in the interests of judicial economy, which the Supreme Court has found to be insufficient justification for a stay pending a similar proceeding.").

Further, and also noteworthy, the defendant in *Hunstein* may ultimately appeal to the Supreme Court. Thus, *even if* the Eleventh Circuit denies the petition for *en banc* review (or grants the petition[10] and then ultimately affirms the panel decision *en banc*) and thus fails to issue a ruling that satisfies Defendant, Defendant undoubtedly will suggest that this Court stay this matter

---

[10] A decision to grant the petition will serve to vacate the panel opinion. This will necessarily lead to even more delay as the issues are re-briefed and re-decided.

pending resolution of any related proceedings before the Supreme Court. *Accord* Schwyhart v. AmSher Collection Servs., Inc., 182 F. Supp. 3d 1239, 1243 (N.D. Ala. 2016) ("AmSher asserts that the stay it desires would not be 'indefinite', but that is clearly not the case . . . [and] there is always the possibility that the D.C. Circuit's decision will be appealed to the Supreme Court, adding a further layer of indefinite—and perhaps lengthy—delay were a stay to be granted here."); *see also* Thomas v. Ocwen Loan Servicing, LLC, No. 5:17-CV-73-OC-30PRL, 2017 WL 2426846, at *2 (M.D. Fla. June 5, 2017) ("the Court concludes a stay under these circumstances will not promote judicial economy, but it will harm Plaintiff."); Owens-Benniefield v. Nationstar Mortg. LLC, No. 8:17-CV-540-T-33TGW, 2017 WL 1426720, at *2-*3 (M.D. Fla. Apr. 21, 2017) ("Also weighing against a stay is the uncertainty of when the D.C. Circuit will rule. . . . Furthermore, there is always the possibility that the D.C. Circuit's decision will be appealed to the Supreme Court, adding a further layer of indefinite—and perhaps lengthy—delay were a stay to be granted here. . . . Balancing these considerations, the Court determines that the TCPA claim should not be stayed pending decision of ACA International."); Sliwa v. Bright House Networks, LLC, No. 2:16-cv-235-FtM-29MRM, 2016 WL 3901378, at *4 (M.D. Fla. July 19, 2016) ("In short, the indefinite length and uncertain outcome of the appeal substantially weigh against requiring Plaintiff 'to stand aside while a litigant in another [case] settles the rule of law that will define the rights of both.'") (*quoting* Landis, 299 U.S. at 255).

Such delay will serve only to harm the public and absent class members, not protect them. As such, this Court should deny Defendant's motion to stay.

## CONCLUSION

Defendant fails to meet its burden to justify the indefinite stay it seeks. *See* Williams v. Bluestem Brands, Inc., No. 8:17-vb-1971-T-27AAS, 2017 WL 6507226, at *1 (M.D. Fla. Dec. 15,

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

2017) (denying stay request). For the same reasons Judge Dimitrouleas and Judge Smith have denied multiple, substantially identical motions to stay, this Court should deny Defendant's pending Motion to Stay and allow discovery to proceed without delay.

Dated: September 14, 2021

Respectfully Submitted,

  /s/ Thomas J. Patti
**JIBRAEL S. HINDI, ESQ.**
Florida Bar No.: 118259
E-mail:   jibrael@jibraellaw.com
**THOMAS J. PATTI, ESQ.**
Florida Bar No.: 118377
E-mail:   tom@jibraellaw.com
The Law Offices of Jibrael S. Hindi
110 SE 6th Street, Suite 1744
Fort Lauderdale, Florida 33301
Phone:   954-907-1136
Fax:       855-529-9540

*COUNSEL FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 14, 2021, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

  /s/ Thomas J. Patti

**THOMAS J. PATTI, ESQ.**
Florida Bar No.: 118377